In the Matter of LEHIGH VALLEY
MILLS, INC.
No. 27519.

United States District Court
E. D. Pennsylvania.
Jan. 13, 1964.

Dower, Kanehann, Huston, McDonald & Cahn, Harry A. Dower, by Joseph R. McDonald, Allentown, Pa., for trustee.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., by Sullivan Cistone, Asst. U. S. Atty., Sydney J. Fires, Philadelphia, Pa., for Small Business Administration.

WOOD, District Judge.

This is a petition to review the Referee's refusal to amend his order of September 10, 1963, wherein he authorized the Small Business Administration to take possession of all machinery and equipment, inventory and accounts receivable of the bankrupt and to dispose of them in accordance with the terms of its security agreement. The trustee was ordered to surrender all of his right, title and interest in the property. No restriction upon the disposition of the funds realized from the liquidation was

contained in the order. On September 18, 1963, the trustee filed his petition with the Referee praying that the Court order the Small Business Administration to hold the proceeds in an escrow account until the determination of the question of postponement of liens which the trustee raised in that petition.

The Referee refused to rehear the matter and he dismissed this petition whereupon the trustee filed the instant petition for review with this Court.

The question of postponement of liens arises because on the date of the filing of the petition for arrangement there existed in the Bureau of Corporation Taxes, Department of Revenue, Commonwealth of Pennsylvania, liens of record for unpaid corporate taxes.

The trustee asserts that the liens of the Commonwealth of Pennsylvania existed on October 31, 1962,[1] the date Lehigh Valley Mills, Inc., filed its petition for arrangement under Chapter XI of the Bankruptcy Act.[2] It is further asserted by the trustee that under Pennsylvania law liens for unpaid corporate taxes are superior to all other liens on the property in question from the date of *settlement, assessment or determination.* Act of August 19, 1953, P.L. 1146, § 6; 72 P.S. § 1401 (Supp.1963). Such liens, it is argued, are subject to postponement under § 67, sub. c of the Bankruptcy Act, and under the decision in In re Quaker City Uniform Company, 238 F.2d 155 (3 Cir. 1956), the postponement of such statutory liens for corporate taxes will postpone the liens of the perfected security interests of the Small Business Administration in payment to those claims given priority under § 64, sub. a (1) and (2) of the Bankruptcy Act.

The trustee is not concerned whether the taxes are ever paid. The trustee's concern is to keep the fund realized on the sale of the collateral available for the payment of administrative expenses and

wage claims, which he considers his duty under In re Quaker City Uniform Co., supra.

 The Small Business Administration (Administration) is an agency of the Federal Government created to encourage free competition and to preserve the economic well being and security of the Nation. Small Business Act, 15 U.S.C.A. §§ 631, 633. Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960). Pursuant to this policy the Administration participated in a $100,000 loan to the Bankrupt to the extent of 51 per cent. The remaining 49 per cent was advanced by the Girard Trust Corn Exchange Bank of Philadelphia (24%) and The First National Bank of Allentown to the extent of 25 per cent. The mortgage and bond and the note were made payable to The First National Bank of Allentown which acted as servicing agent for the loan and which held securities for the payment of the loan.

A security agreement dated June 4, 1962 covers all the inventory and accounts receivable of the Bankrupt. The First National Bank of Allentown was the secured party and the Bankrupt is the debtor. A financing statement covering the inventory and accounts receivable was filed in the Prothonotary's Office of Lehigh County on May 29, 1962 and in the Office of the Secretary of the Commonwealth on May 31, 1962.

This perfected security interest was assigned to the Administration by The First National Bank of Allentown in accordance with the terms of the participation agreement between the banks and the Administration. The Administration then moved to reclaim the personal property covered by this security agreement and financing statement and to dispose of the same at a Commercial Code sale. This authority was granted by the Referee's order of September 10, 1963.

---

1. The liens for unpaid corporate taxes were settled on October 20, 1960 in the sum of $609.01 and on September 6, 1961 in the sum of $747.00.

2. Lehigh Valley Mills, Inc., was adjudicated a bankrupt on June 10, 1963.

The question certified for review by the Referee is the following:

"Whether liens in favor of the Commonwealth of Pennsylvania for taxes, which may be subject to postponement under Section 67(c) of the Bankruptcy Act, will set in motion a circuity of liens such as was found to exist in Quaker City Uniform Co., Inc. (3rd Circuit, 1956), 238 F.2d 155, and render the lien or security interest of Small Business Administration to a position following costs of administration, priority wage claims and the liens for taxes of the Commonwealth of Pennsylvania?

"The Referee held that the circuity of liens which had been set in motion by the lien of the landlord's distraint in Quaker City Uniform case had not taken place here."

■ At the outset it is necessary to determine whether Federal or State law controls the disposition of this matter. *"Except in situations where federal law has spoken,* priority among liens is determined by the law of the state." In re Quaker City Uniform Co., supra, 238 F. 2d at p. 157. In that case the competing liens were held by a chattel mortgagee and a landlord. No federal lien was involved.

The Federal law in this area is in part contained in 15 U.S.C.A. § 646 of the Small Business Act dealing with liens, as follows:

"Any interest held by the Administration in property, as security for a loan, *shall be subordinate to any lien on such property for taxes due on the property to a State,* or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States." (Emphasis supplied)

Under Pennsylvania law as contained in 72 P.S. § 1401, all State taxes " * * * shall be a first lien upon the franchises and *property, both real and personal,* of such corporation * * * from the date of settlement, assessment or determination * * *"

■ The Pennsylvania Supreme Court in Commonwealth v. Central Realty, 338 Pa. 172, 178, 179, 180, 12 A. 2d 312, 315 (1940), has held that the lien for unpaid taxes attaches at settlement: "It was thenceforth sufficient in order to establish the lien, for the Commonwealth to settle the tax in the Auditor General's office in Harrisburg." [3] It no longer became necessary to file the lien. Creditors are required at their peril to contact Harrisburg to ascertain whether any outstanding taxes are owed to the Commonwealth. Commonwealth v. Central Realty, supra. It is also well settled that this tax lien attaches to the realty and personalty of the debtor. In re Pennsylvania Central Brewing Co., 135 F.2d 60 (3 Cir. 1943).

■ "This priority, of course, may not prevail against the sovereignty of the United States without the express consent of Congress." Ferbo Trading Corp. v. Jo-Mar Dress Corp., 78 Pa. Dist. & Co. R. 337 (1951). Congress has consented to the subordination of the lien of the Administration to any lien for taxes owing to the States if such tax lien would be superior to a similar lien held by any party other than the United States, 15 U.S.C.A. § 646.

Therefore, it is unquestioned that the lien rights of a private creditor in the position of the Administration would be inferior to the Commonwealth under Pennsylvania law. This tax lien is effective from the date of settlement and any judgment would be surplusage. Petition of Frola, supra; Commonwealth v. Central Realty Co., supra, Footnote 3.

3. The lower courts of Pennsylvania have uniformly followed this holding. Petition of Frola, 52 Pa.Dist. & Co.R. 357 (1945); Commonwealth v. City Realty Co., 56 Pa.Dist. & Co.R. 166 (1946); Commonwealth v. Corner Realty Co., 41 Pa.Dist. & Co.R. 236 (1941); Ferbo Trading Corp. v. Jo-Mar Dress Corp., 78 Pa.Dist. & Co.R. 337 (1951).

Congress has seen fit to defer to State law to determine the superiority of liens for taxes owing to the State when competing with an Administration lien. 15 U.S.C.A. § 646. In view of this clear indication of Congressional purpose we hold that the corporate tax liens of the Commonwealth of Pennsylvania, settled before the Administration perfected its Security Interest, are superior to the Administration's lien. Even applying "the first in time first in right" principle enunciated by United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1953), the same result would occur.

■ Will this postponement set in motion a circuity of liens and render the lien of the Administration to a position following costs of administration, priority wage claims and the liens for taxes of the Commonwealth of Pennsylvania?

Section 67, sub. c of the Bankruptcy Act provides as follows:

"c. Where not enforced by sale before the filing of a petition initiating a proceeding under this Act * * * (1) though valid against the trustee under subdivision (b) of this section, statutory liens * * * on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of Section 64 of this Act * * *"

By operation of the above-quoted language of Section 67, sub. c, expenses of administration and wage claims, while normally unsecured claims given first and second priority under Section 64, sub. a become payable under the specific language of Section 67, sub. c before statutory liens on personal property not accompanied by possession of such property. The instant lien of the Commonwealth of Pennsylvania upon all the franchises and real and personal property of Lehigh Valley Mills, Inc., is a statutory lien (72 P.S. § 1401) not accompanied by possession of the Bankrupt's personal property within the meaning of the Bankruptcy Act, Section 67, sub. c. It is therefore subject to postponement by operation of Section 67, sub. c and is, accordingly, postponed in payment to the debts specified in Section 64, sub. a (1) and (2). In re Pennsylvania Central Brewing Co., 114 F.2d 1010, 1012 (3 Cir. 1940), cert. denied Stern v. Pennsylvania Central Brewing Co., 312 U.S. 685, 61 S.Ct. 612, 85 L.Ed. 1123 (1941).

Section 67, sub. c also applies to perfected statutory liens of the Federal Government on personal property *unaccompanied by possession of the property* at the time of the filing of the petition in bankruptcy. Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 127, 69 S.Ct. 469, 93 L.Ed. 543 (1949).

It is uncontroverted that the Administration never had possession of the Bankrupt's property before the filing of the bankruptcy petition. The Administration first obtained possession by the Referee's order of September 10, 1963. Consequently, the Administration's lien is subject to Section 67, sub. c of the Bankruptcy Act.

Therefore, since the lien of the Commonwealth of Pennsylvania is superior to the lien of the perfected security interest of the Administration under the applicable lien law of Pennsylvania and the postponement of the Commonwealth's lien under Section 67, sub. c necessarily causes the inferior Administration lien to be postponed in the same relative position. In re Quaker City Uniform Company, supra; In re Einhorn Brothers, 272 F.2d 434 (3 Cir. 1959).

### ORDER

And now, this 13th day of January, 1964, the order of the Referee is hereby reversed and the case is remanded to the Referee to take appropriate steps to protect the proceeds of the sale of the personal property of the Bankrupt so that the fund may be available for the payment of administration expenses and wage claims.